IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| SETH ROBERTS,<br><br>     Plaintiff,<br><br>vs.<br><br>ROYAL WOOD MASTER ASSOCIATION, INC. d/b/a ROYAL WOOD GOLF AND COUNTRY CLUB<br><br>     Defendant. | Case No.: |

**COMPLAINT**

Plaintiff, SETH ROBERTS ("Roberts" or "Plaintiff") sues Defendant, ROYAL WOOD MASTER ASSOCIATION, INC. d/b/a ROYAL WOOD GOLF AND COUNTRY CLUB ("Royal Wood" or "Defendant"), and alleges:

**NATURE OF CLAIMS**

1. This is an action under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., (FMLA). [1]

**JURISDICTION AND VENUE**

2. This action arises under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2617. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Plaintiff Seth Roberts is a resident and citizen of Lee County, Florida.

---

[1] Plaintiff intends amend this Complaint to add claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101-12117 ("ADA"), and the Florida Civil Rights Act ("FCRA"), upon receipt of a Right to Sue from the EEOC or FCHR.

4. Defendant Royal Wood is a Florida nonprofit corporation, with its principal place of business located at 4300 Royal Wood Blvd, Naples, FL 34112.

5. Venue is proper in the Middle District of Florida, Fort Myers Division.

## FMLA COVERAGE AND ELIGIBILITY

6. At all times relevant to this action, Defendant was and is an "employer" within the meaning of 29 U.S.C. § 2611(4) of the FMLA.

7. At all times material, Defendant employed, and continues to employ, 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

8. At times material, Plaintiff was employed at a work site or location where Defendant employed 50 or more employees within a 75-mile radius.

9. Under 29 U.S.C. § 2611(2)(A)(i), Plaintiff was an employee eligible for FMLA leave because he was employed at least 12 months and worked at least 1250 hours during the 12-month period immediately preceding his FMLA eligible leave in this action.

10. Plaintiff's need for leave was for his own serious health condition, as defined by 29 U.S.C. § 2611(11) and relevant regulations, thereby constituting a qualifying reason for FMLA leave.

11. Plaintiff notified Defendant of the need for leave for FMLA qualifying leave and otherwise complied with all notice obligations imposed by the FMLA, its implementing regulations, and the employer's FMLA policy.

## STATEMENT OF FACTS

12. Royal Wood is a residential community and private country club located in Naples, Florida.

13. Royal Wood employs General Manager, Debbie Richards, to oversee the operations of the club and its workforce.

14. In August 2023, Seth Roberts was hired by Royal Wood to serve as its Controller. For the next one and half years, Roberts worked full-time as the Controller.

15. During his tenure at Royal Wood, Roberts received good performance reviews from management. Prior to his termination, Roberts was never counseled or disciplined for his work performance or conduct.

16. In September 2024, Roberts experienced negative side effects from a new medication. In or around that time, Roberts was diagnosed with Bipolar Type 1.[2] This condition causes memory lapses, an inability to drive, and cognitive impairment.

17. On or about September 24, 2024, Roberts (through his wife) communicated to General Manager Richards his need for leave due to his own serious medical condition.

---

[2] Roberts was later diagnosed with Schizoaffective Disorder.

18. Roberts communicated his need for a medical leave between 3-8 weeks. Roberts also communicated his cognitive impairment and his inability to drive.

19. Ms. Richards failed to send the appropriate FMLA paperwork.

20. In fact, Ms. Richards expressly stated her animus towards Roberts taking any extended medical leave of absence, stating, "Let's take this one week at a time (8 weeks is hard to wrap my head around)."

21. Instead of providing the proper FMLA paperwork, Ms. Richards continued to ask for "updates" on Roberts' health and improperly asked for details about Roberts' condition.

22. On or about October 3, 2024, Roberts again communicated his need for medical leave (or a work from home accommodation), specifically requested FMLA and offered to provide a doctor's note for the absences.

23. Without discussion, Ms. Richards denied the work from home accommodation, failed to provide any FMLA paperwork, and stated having Roberts on leave was stressful for her. She again asked for details about his medication.

24. On October 4, 2024, Ms. Richards refused Roberts' doctor's note, stating she did not want an "excuse note unless it tells what the problem is" and further opined that if the medical condition is serious, Mr. Roberts should be hospitalized. That day, Roberts again requested FMLA.

25. In response, Ms. Richards threatened to terminate Roberts' employment if he did not return to work the following Monday.

26. Ms. Richards stated that if Roberts chose to take FMLA, she will "advertise for the job."

27. Roberts communicated his diagnosis to Ms. Richards and stated that he selected to take FMLA.

28. On October 14, 2024, despite repeated requests for FMLA leave, Ms. Richards forced Roberts to attend a staff meeting on October 16 via FaceTime.

29. On October 21, 2024, Roberts physically returned to work pursuant to Ms. Richards' threats of termination. That same day, Roberts was injured in a car accident.

30. Finally, on or about November 7, 2024, Ms. Richards' emailed Roberts FMLA paperwork.

31. Defendant treated Roberts' time off September 24-27, 2024, week of September 30, week of October 7, week of October 14, 2024, and two days each week during October 21, 2024 and October 28, 2024 as FMLA leave.

32. Defendant noted that Roberts had returned to work, but that he may need additional time off for medical reasons, such as periodic medical appointments.

33. Specifically, Defendant provided two different Notice of Eligibility & Rights and Responsibility forms, and a Designation Notice to Roberts.

34. The first Notice of Eligibility & Rights and Responsibility covered September 24, 2024 and did not request any additional information.

35. The Designation Notice provided by Defendant designated and approved FMLA for September, 24-27, 2024, week of September 30, week of October 7,

week of October 14, 2024, and two days each week during October 21, 2024 and October 28, 2024.

36. The second Notice of Eligibility & Rights and Responsibility covered October 24, 2024 for periodic leave.

37. Roberts promptly completed the FMLA paperwork.

38. On or about March 17, 2025, Ms. Richards denied Robert's request for a raise, stating he could not "find another job that is as lenient as I am with time."

39. On or about March 24, 2025, Roberts suffered another negative reaction to medication and communicated his need for medical absence. Ms. Richards responded, "REALLY!"

40. Roberts communicated his need for medical absence due to physician's orders.

41. Ms. Richards advised Roberts to stay home until approved by his doctor to avoid a car accident.

42. On or about March 31, 2025, Roberts submitted a physician's note indicating he needed time off until April 8, 2025 due to his medical condition.

43. Despite having available FMLA leave, Ms. Richard failed to provide Roberts with FMLA leave.

44. On April 2, 2025, Roberts' wife inadvertently cc'd Roberts' work email on a detailed confidential email to his doctor regarding his medical condition, symptoms, and treatment.

45. The same day, Ms. Richards terminated Roberts immediately after receiving the inadvertent email.

46. As a direct result, Mr. Roberts has suffered significant harm, for which he seeks to recover damages under the FMLA including lost wages, the value of lost benefits, liquidated damages and attorney's fees.

## COUNT I
## Family Medical Leave Act
## (Interference with Plaintiff's Exercise of FMLA Rights)

47. Plaintiff realleges and incorporates allegations 1–46.

48. At all relevant times, Plaintiff suffered from Bipolar Type 1 and later, Schizoaffective Disorder. This condition causes memory lapses, inability to drive, and cognitive impairment. These conditions required ongoing medical treatment by a medical provider and rendered Plaintiff unable to perform the essential functions of his position for certain periods, specifically while adjusting to medicine.

49. Under the Family and Medical Leave Act, Plaintiff's mental impairment constitutes a "serious health condition" as defined by 29 U.S.C. § 2611(11) and the Department of Labor's implementing regulations at 29 C.F.R. §§ 825.102 and 825.113. Those regulations make clear that a serious health condition includes both physical and mental conditions that involve either inpatient care or continuing treatment by a health care provider. Because Plaintiff's mental health impairment required medical care and caused periods of incapacity, it met the criteria for coverage under the FMLA.

50. Plaintiff gave notice to Defendant on September 24, 2024, wherein he conveyed the need for leave due to his own serious health condition, his eligibility for

7

leave, and the emergent nature of the leave. He gave notice for additional leave on or about March 17, 2025.

51. Defendant violated the FMLA by interfering with Plaintiff's FMLA rights under 29 U.S.C. § 2615(a)(1) by doing the following:

   a. Failing to notify Plaintiff of his eligibility and rights under the FMLA after Defendant had notice of Plaintiff's need for FMLA leave and after Plaintiff requested leave.

   b. Dissuading Plaintiff from exercising his rights under the FMLA.

   c. Threatening termination if Plaintiff exercised his rights under the FMLA.

   d. Terminating Plaintiff while he was on FMLA qualifying leave without consideration of his rights under the FMLA including his right to be reinstated into the same or a substantially similar position.

52. As a result of Defendant's actions, Plaintiff has suffered damages and seeks to recover lost wages, benefits, liquidated damages, attorney's fees and costs, and such other relief as is allowed under the FMLA and authorized by the Court.

### COUNT II
### Family Medical Leave Act
### (FMLA Retaliation/Discrimination)

53. Plaintiff realleges and incorporates allegations 1-46.

54. Plaintiff engaged in protected activity under the FMLA when he requested and gave notice of his leave for a qualifying reason under the FMLA, when he took FMLA leave, and when he requested additional available FMLA leave.

55. Defendant denied Plaintiff a raise due to his need to take FMLA leave.

56. Defendant terminated Plaintiff immediately upon learning of his need to take additional FMLA leave.

57. There is a causal link between Plaintiff's protected activity and the adverse employment actions. Plaintiff's protected activity is close in temporal proximity to the adverse employment actions.

58. Defendant created a pretextual reason for the termination.

59. Plaintiff was terminated and discriminated against because of his notice and request for FMLA protected leave and for taking FMLA protected leave (all protected activity). Consequently, Defendant violated the retaliation and nondiscrimination prohibitions of the FMLA

60. As a result of Defendant's actions, Plaintiff has suffered damages and seeks to recover lost wages, benefits, liquidated damages, attorney's fees and costs, and such other relief as is allowed under the FMLA and authorized by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief under both Count I and Count II:

    a. Lost back wages and benefits;
    b. Front pay;
    c. Liquidated damages;
    d. Attorney's fees and costs;
    e. All such other relief as the Court deems proper.

Dated: October 21, 2025

                Respectfully submitted,

                /s/ Jason L. Gunter
                Jason L. Gunter
                Fla. Bar No. 0134694
                Email: Jason@GunterFirm.com
                Conor P. Foley
                Fla. Bar No. 111977
                Email: Conor@GunterFirm.com

                **GUNTERFIRM**
                2165 W. First St., #104
                Fort Myers, FL 33901
                Tel: 239.334.7017